UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No. 2:10-cr-136-DBH-03 |
| HASAN WORTHY, ) | |
| ) | |
| Defendant ) | |

## DECISION AND ORDER ON DEFENDANT'S MOTIONS TO SUPPRESS AND TO DISMISS

The defendant Hasan Worthy has filed a motion to suppress or exclude evidence and to dismiss the Fourth Superseding Indictment against him. Worthy also seeks an evidentiary hearing and access to grand jury proceedings. The controversy involves phone calls that Worthy made while incarcerated at the Strafford County Jail, calls that were recorded. The government has agreed not to use the evidence[1] in its case-in-chief and urges me to grant that part of the motion. Accordingly, the motion to suppress or exclude is **Granted** as to the recorded calls. However, I **Deny** the motion to dismiss and the request for an evidentiary hearing and access to grand jury proceedings.[2]

---

[1] The government says that it will not "use the substance of any of the prison calls in its case in chief." Gov't Response to Def. Worthy's Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment at 1 (ECF No. 593). I interpret that statement to include testimony that Nicole Webster-Gersy might give about the conversations.

[2] I also deny the request that the government bear the burden of showing that all its evidence was obtained entirely independent of the telephone conversations. Def. Worthy's Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment at 2 (ECF No. 585).

## BACKGROUND

Worthy has been detained pending trial. For part of his detention he has been housed at the Strafford County Jail in New Hampshire, one of the locations where the U.S. Marshal for the District of Maine houses Maine federal prisoners awaiting trial.[3] The Strafford County Jail's telephone system for inmates is as follows, according to the official who has responsibility for maintaining it:

> The inmate telephone system allows for two modes of communications. The general inmate telephone system (denoted by blue telephones) are used by inmates to make outgoing calls. Calls cannot be received on these lines. All calls made on this system contain a recorded statement that is played at the outset of every call that states the call will be recorded. Recordings of inmate calls made on this phone system are maintained in the regular course of business for approximately one (1) year.
>
> In addition, inmates have access to telephones that can receive incoming calls from legal counsel. Communications that occur on these telephones are not monitored nor recorded. As part of the jail's established procedures, each inmate is advised of this attorney phone at the time of the inmate's intake by the Housing Unit Officer.

Gov't Response to Def. Worthy's Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment, Ex. A (ECF No. 593-1). The defendant has not challenged the accuracy of this description of the telephone system and procedures.

After first being housed at the Cumberland County Jail, Worthy was moved to Strafford County. While there, he apparently used the outgoing,

---

[3] There are no federal pretrial facilities in Maine. Although local jails are used as available, it is common for federal detainees to be housed at the Strafford County facility. The defendant has presented no evidence to support his assertion that the U.S. Attorney's Office (as distinguished from the U.S. Marshal) arranged for Worthy to be housed at Strafford County.

recorded, telephone system to contact a female co-defendant and, on three occasions, to reach his lawyer's office. The DEA agent in charge of the case asked the Jail for its telephone recordings of Worthy's calls. Def. Worthy's Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment, Ex. A (ECF No. 585-1).[4] On November 5, 2010, she listened to them (apparently they all occurred in October except for some on November 1) but, any time it became apparent that Worthy was calling his lawyer, she stopped listening to that call. She did listen to a number of calls that Worthy placed to co-defendant Nicole Webster-Gersy. According to the defendant, Webster-Gersy professed love for Worthy and engaged him in conversation about the crime and the co-defendants. The DEA agent has sworn that she did not (and to her knowledge, no one else did) "instruct, direct, or encourage" Webster-Gersy to talk to Worthy. Affidavit of Kristine Tierney ¶ 6 (ECF No. 593-2).

## SIXTH AMENDMENT RIGHTS

Worthy's claim that the government violated his Sixth Amendment rights is not persuasive. So far as his three communications with his lawyer's office are concerned, Worthy was warned at the beginning of each call that his call would be recorded. If he had something confidential to say, Worthy had only to request that his lawyer return the call on the unmonitored, unrecorded line. In

---

[4] The defendant complains about the delayed disclosure of these conversations. The disclosure was late (these are, after all, statements of the defendant to which he is entitled under Rule 16(a)(1)(B)). The government states that it was previously unaware of the recorded conversations (and the DEA agent's affidavit says that she did not discuss the contents of the calls with the AUSA or send him a copy of the proceedings, Tierney Aff. ¶ 5), but, more importantly, the trial is not yet imminent, they have now been disclosed, and I find no prejudice.

addition, I have no reason to disbelieve the DEA agent's affidavit that she stopped listening to any recorded call as soon as she could identify a recorded call as being directed to the law office, or the Assistant United States Attorney's statement that he has listened to none of the calls. Gov't Response to Def. Worthy's Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment at 5. Finally, none of the calls will be used in the government's case-in-chief. Thus, there is no violation of attorney-client privilege or the Sixth Amendment with respect to Worthy's three calls to his lawyer's office,[5] and nothing that would justify an evidentiary hearing, access to grand jury records, placing the burden on the government to demonstrate that all its evidence is independent of the telephone recordings, or dismissing the indictment.

Worthy also argues that Nicole Webster-Gersy was speaking to him as a government informant, and thereby infringed his Sixth Amendment rights. He has no evidence to buttress his assertion that Webster-Gersy was acting on behalf of the government, but he argues that Webster-Gersy had agreed to plead guilty before these phone calls occurred (her guilty plea was not entered until much later, but she signed the agreement before the phone calls occurred) and infers that she was cooperating with the government during this

---

[5] Worthy is concerned that the calls may have revealed defense strategy and may have caused the government's decision to bring a later superseding indictment. That is only speculation. The government has denied that the calls had anything to do with the superseding indictment, see note 4 supra, but more importantly Worthy had a secure telephone available to him, yet chose for undisclosed reasons to use the telephone that he knew would be recorded. I will not permit an inquiry into prosecutorial strategy or grand jury proceedings on so slim a foundation.

4

time. Even if that is so, Webster-Gersy's actions create a Sixth Amendment issue only if the government was complicit in her talking to Worthy. The DEA agent has stated by affidavit that neither she nor anyone else "instruct[ed], direct[ed], or encourage[d]" Webster-Gersy to talk to Worthy. Tierney Aff. ¶ 6. Worthy has given me no basis upon which to conclude that the government was involved in Webster-Gersy's communications with Worthy. And if it was, the remedy would be suppression, relief that I am already granting.[6]

---

[6] Worthy requests an evidentiary hearing on:
1. The extent to which Special Agent Tierney listened to and employed recordings of attorney-client recordings;
2. Whether Ms. Webster-Gersy was encouraged to communicate with the defendant;
3. Why Ms. Webster-Gersy's agreement to plead guilty was kept secret for so long;
4. Whether Ms. Webster-Gersy, who during the fall of 2010 was actively assisting Defendant Worthy's defense, communicated any attorney-client communications or defense strategies directly to the government;
5. The time at which the DEA forwarded the recorded conversations or the memo about the recorded conversations to the office of the United States Attorney;
6. The considerations that caused the government to seek a series of superseding indictments, and whether the intercepted communications between the defendant and his attorney was a motivating factor;
7. The reasons the defendant was moved from Cumberland County to Strafford County;
8. How the government selected calls by the defendant to be gathered;
9. Whether the inclusion of calls with defense counsel among the gathered calls was inadvertent and the procedures, if any, that the Department of Justice follows, for disclosing the existence of such recordings if they are gathered inadvertently; and
10. All other circumstances relevant to this motion.

Def. Worthy's Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment at 16. In his reply memorandum, the request is:
   A. Did the government know of cooperating witness Nicole Webster-Gersy's ongoing series of recorded conversations with defendant Worthy, encourage those calls, even tacitly, by suggesting to her, for example, that the government would secure the recordings, by asking her what Mr. Worthy had to say about various topics, or otherwise?

*(continued next page)*

B. Is it a coincidence that defendant Webster-Gersy's arraignment was postponed the very day that Agent Tierney secured the recordings?
C. Does the government routinely secure copies of detainees' conversations? Or was securing these recordings unusual?
D. If securing the recordings was unusual, what caused the government to obtain the recordings in this case?
E. If (as the government asserts in its response) Agent Tierney was unaware of the calls between Webster-Gersy and Worthy until she listened to the tape recordings, why did she get them at all?
F. If the government routinely secures a detainees recorded conversations, why has it not produced in discovery the recordings of any other detainees?
G. As Agent Tierney's Affidavit states that in 2010 she provided the Office of the United States Attorney her memorandum documenting that she reviewed recordings of conversations between Worthy and Webster-Gersy, why did the government withhold that information until 2012?
H. Was the information withheld so that the conversations could continue?
I. As defendant Webster-Gersy is cooperating with the government, why has the government not provided an affidavit from her?
J. Is it a coincidence that Ms. Webster-Gersy signed her written agreement to cooperate on September 21, 2010, before the recorded conversations, and that the agreement included a promise by her to plead guilty to the Third Superseding Indictment, even though no such indictment existed until November, 2010, and that the agreement was kept secret until after she had participated in the recorded calls?
K. Was Ms. Webster-Gersy's initial appearance delayed so that the recorded conversations could continue?
L. If not, why was her first appearance delayed until November 15, 2010, nearly two months after she signed her agreement to plead guilty to the (not yet in existence) Third Superseding Indictment?
M. Why did Ms. Webster-Gersy enter pleas of not guilty to the second and third superseding indictments in November and December, 2010, respectively (see Docket No. 220 and 540), after having agreed in writing back in September 2010 to plead guilty to the Third Superseding Indictment?
N. Why was Ms. Webster-Gersy's plea of guilty not entered until September 2, 2011, nearly a full year after she agreed in writing to plead guilty and cooperate against defendant Worthy, if it was not so that she could continue to gather evidence against him by engaging in recorded calls while encouraging him to believe she was devoted to him?

Def. Worthy's Reply in Support of Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment at 3-4 (ECF No. 597).

On the current state of the record, I decline to grant those requests for a fishing expedition.

*(continued next page)*

6

Accordingly, the motion is **GRANTED IN PART** (suppression) and **DENIED IN PART** (the remainder).

**SO ORDERED.**

**DATED THIS 15TH DAY OF MAY, 2012**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

In his Reply, the defendant Worthy also challenges certain factual assertions in the government's legal memorandum:
1. That the memorandum's assertion that the DEA Agent "learned upon listening to the recordings that a co-defendant (Nicole Webster-Gersy) received numerous calls from defendant" is not supported by the DEA Agent's affidavit or otherwise. The DEA Agent's affidavit stated that she "listened to the recordings. Most of the recordings were calls made by Worthy to Nicole Webster-Gersey." Tierney Aff. ¶ 3. That is sufficient to support the statement in the government's memorandum. (I recognize that Worthy believes that the Agent may have known of the communications even before she listened to them.)
2. That the memorandum's assertion that the Agent "never communicated with Webster-Gersey about talking with Worthy on the telephone" is not supported by the Agent's affidavit. Her affidavit states: "I did not instruct, direct, or encourage Nicole Webster-Gersey to communicate with Hasan Worthy and I am unaware of any person involved in the investigation or prosecution who did so." Id. The government's memorandum is not an unfair reflection of the Agent's statement.
3. That the recent disclosures were Jencks disclosures when in reality they were late discovery. I agree that these recordings were late discovery, but their lateness has not caused prejudice that would require dismissal or an evidentiary hearing.

Def. Worthy's Reply in Support of Mot. to Suppress Evidence and to Dismiss Fourth Superseding Indictment at 1-2.